[Cite as *Wagner v. Weaver*, 2010-Ohio-978.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY


RANDALL K. WAGNER,                                        CASE NO. 5-09-30

   PLAINTIFF-APPELLEE,

 v.

BOBBY WEAVER, ET AL.,                                        **O P I N I O N**

   DEFENDANTS-APPELLANTS.


**Appeal from Hancock Municipal Court**
**Trial Court No. 08-CVF-02178**

**Judgment Affirmed**

**Date of Decision:  March 15, 2010**


**APPEARANCES:**

   *Philip L. Rooney* **for Appellant**

   *John C. Filkins* **for Appellee**

**SHAW, J.**

{¶1} Defendants-Appellants Bobby and Myrna Weaver (the "Weavers") appeal the July 20, 2009 Judgment Entry of the Findlay Municipal Court, Civil Division, awarding Plaintiff-Appellee Randall Wagner ("Wagner") $3,206.07 for retail goods damaged as a result of the Weavers unlawfully evicting Wagner from the commercial premises that he leased.

{¶2} The Weavers owned a commercial rental property in the City of Findlay. In early 2008, they entered into an agreement with Wagner who intended to operate on the premises a small retail clothing store specializing in the sale of women's lingerie. The parties entered into a one-year commercial lease commencing on February 1, 2008 and terminating on January 31, 2009. Under the terms of the lease, Wagner agreed to pay $800 per month plus a prorated percentage of the gas and electric utilities.

{¶3} Wagner timely paid the rent through the month of June 2008. However, he failed to pay the utilities for June and the rent for July. As a result, on July 30, 2008, the Weavers, without giving notice to Wagner, changed the locks on the doors of the premises preventing Wagner from operating his business. However, the inventory of Wagner's business remained locked in the premises. The Weavers later informed Wagner that he would not be permitted to retrieve his inventory until he paid the entire amount due.

{¶4} On August 25, 2008, Wagner filed this suit against the Weavers for unlawful eviction and conversion. On August 29, 2008, the Weavers permitted Wagner temporary access to the premises to remove his inventory. Upon removal, Wagner discovered that several items in the inventory had suffered sun damage as a result of continued exposure in the storefront window. Wagner stated that he maintained the business practice of rotating the stock in the front window display every few days to prevent fading and discoloration which was caused by prolonged sun exposure. Wagner retained some of the damaged items as evidence for this case and donated the remainder to charity because he believed it was against the law to sell the items in their damaged condition.

{¶5} On July 20, 2009, the parties appeared in court to resolve the matter. Wagner introduced two handwritten lists documenting the quantity and retail price of each item in the storefront window that suffered damage totaling $3,630.30. No other evidence was offered as to the value of the damage clothing. At the close of all the evidence, the trial court found that the Weavers had inappropriately prevented Wagner from accessing the premises in violation of the parties' lease. However, the trial court also found that Wagner remained liable for the unpaid rent and utilities. Therefore, the trial court awarded Wagner $3,206.07, an amount

comprising of the retail value of the damaged clothing reduced by the outstanding amount Wagner owed to the Weavers for the unpaid rent and utilities.[1]

{¶6}   The Weavers filed an appeal to this Court asserting two assignments of error.

### ASSIGNMENT OF ERROR I
**THE TRIAL COURT ERRED IN GRANTING THE APPELLEE DAMAGES BASED ON THE RETAIL VALUE OF ITS INVENTORY AND FAILED TO PROPERLY CALCULATE SAID DAMAGES**

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN GRANTING THE APPELLEE DAMAGES WHEN THE APPELLEE FAILED TO PRESENT ANY EVIDENCE TO SUBSTANTIATE ITS CLAIM**

{¶7}   Because both of the Weavers' assignments of error are based upon the assertion that the trial court erred when it awarded Wagner the retail value of the damages clothes, we elect to discuss both assignments of error together.

*The First and Second Assignments of Error*

{¶8}   On appeal, the Weavers argue that the trial court erred when it awarded Wagner the retail value of his damaged property.  They assert two points as the basis of their argument.  First, retail value is an inappropriate measure of damages in this case.  Second, Wagner failed to present adequate evidence to

---

[1] The total amount outstanding was $974.23 which was the utilities for June and July 2008 and the rent for July 2008.  The trial court permitted the Weavers to retain Wagner's security deposit of $550.  Therefore, $424.23 was deducted from the retail value of the damaged goods leaving $3,206.07 as the amount awarded to Wagner.

substantiate his claim for damages. It is undisputed by the parties that the Weavers' wrongful eviction of Wagner from the premises caused the damage to Wagner's retail goods. Therefore, the only issue before us is whether the measure of damages awarded to Wagner was appropriate.

{¶9} The determination of damages is within the discretion of the trial court and will be sustained by a reviewing court unless the award is against the manifest weight of the evidence. *Amerifirst Sav. Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468, 487, 737 N.E.2d 68. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578.

{¶10} Generally when a defendant causes a loss of the plaintiff's personal property, the measure of damages is the difference in the fair market value of the property immediately before and immediately after the loss. See *Cooper v. Fin* (1986), 34 Ohio App.3d 282, 283, 518 N.E.2d 46. However, when no evidence is presented concerning the difference in market values immediately before and after sustaining the loss, an acceptable alternate measure of damages may be employed in certain cases. *Allstate Ins. Co. v. Reep* (1982), 7 Ohio App.3d 90, 91, 454 N.E.2d 580.

{¶11} In the present case, Wagner failed to offer any evidence concerning the fair market value of the clothing before and after it was damaged by sun exposure. The only evidence before the trial court regarding the valuation of damaged items was Wagner's submission of two handwritten lists enumerating the quantity of items damaged and the corresponding retail value of each item. Based on the limited evidence presented at trial, we must determine whether retail value alone is an acceptable measure of damages to compensate the plaintiff in this case.

{¶12} At the commencement of this suit, Wagner operated a clothing business. As in any typical retail business, Wagner purchased items with the intent to resell them to consumers for an increased price to earn a profit. As the Eleventh Appellate District has held, a retailer is generally not entitled to recover the retail price for damaged or destroyed goods because absent an actual sale, the retailer has not yet earned a profit. See *Arko-Plastics v. Drake*, 115 Ohio App.3d 221, 227, 685 N.E.2d 246. The *Drake* Court noted that the basic principle underlying this measure of damages is to restore retailer to the same position he was in prior to the goods being damaged. Therefore, when the difference in fair market value immediately before and after the loss cannot be ascertained, the acceptable measure of compensation to award the retailer is the cost to replace the item at the wholesale price. *Id.*

{¶13} However, we note that the foregoing principles of replacement cost and fair market value do not mean that the retail price may never be used as a

measure of damages for loss or destruction of personal property. A retailer may be entitled to damages when it is established through sufficient evidence that the retail price is an appropriate measure of damages to compensate for the loss sustained. See for example, *The Limited Stores, Inc. v. Pam Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 71, 600 N.E.2d 1027 stating that where it is shown that the goods have a short sale life, cover is impossible and the retailer had sufficiently demonstrated it could have sold the items, a retailer may be entitled to the retail price of damaged goods.

{¶14} In this case, our review of the record reveals that sufficient circumstances existed for the trial court to conclude that the retail value was an appropriate measure of damages. According to the parties' lease, upon Wagner failing to pay the rent by the fifteenth of the month, the Weavers were required to "take out a Dispossessory Warrant" to formally evict Wagner. Instead, the Weavers elected to use self-help by changing the locks on the doors of the premises without giving notice to Wagner—an action which was in violation of their own lease.

{¶15} Additionally, as noted earlier, it is undisputed that it was the precipitous actions of the Weavers in locking Wagner out of the premises which caused the damage to the merchandise.

{¶16} Almost a month passed before the Weavers permitted Wagner to retrieve his property. Wagner testified that during this time he made several

unsuccessful attempts to make contact with the Weavers. Wagner stated that his first formal contact with the Weavers after the lockout was when he received a certified letter from Bobby Weaver dated August 25, 2008. In this letter, Mr. Weaver informed Wagner that the release of his property was contingent on Wagner paying the total amount he owed in arrears on the lease. The letter specifically stated that nothing in the locked premises would be released for "partial payment." The same day, Wagner filed the complaint in this case and within days the Weavers' attorney contacted Wagner to make arrangements to retrieve his property from the premises.

{¶17} We further note that in addition to seeking compensation for the damaged retail goods, Wagner also presented evidence to support a claim for damages based on lost profits. However, the trial court declined to award Wagner damages on this claim because it found that the figures Wagner presented projecting a profit were unsubstantiated given that at the time of the wrongful eviction his business had been operating at a loss for the entire five-month period that the doors were open. Thus, from the record it is evident that the trial court considered the credibility of all the evidence and circumstances in this case when it determined Wagner's recovery.

{¶18} Based on the foregoing, it is apparent that the trial court did not simply elect to use an arbitrary calculation of damages to award Wagner for the loss he suffered as a result of the Weaver's inappropriate actions to exclude him

from the premises that he rented. In this instance, we conclude that the trial court's decision to award Wagner the retail value of the damaged goods was supported by some competent, credible evidence and, therefore, its judgment cannot be reversed as being against the manifest weight of the evidence.

{¶19} Accordingly, the Weavers assignments of error are overruled and the Judgment of the Findlay Municipal Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., and ROGERS, J., concur**

**/jnc**